IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Criminal Docket |
| vs. | No. 8:26-cr-89-JLB-AAS-1 |
| JOSEPH SCOTTO, | |
| Defendant. | |

**TRANSCRIPT OF CHANGE OF PLEA HEARING**

Heard in Courtroom 10B
Sam M. Gibbons United States Courthouse
801 North Florida Avenue
Tampa, Florida 33602
April 21, 2026 - Tuesday
10:16 a.m. - 11:02 a.m.

**BEFORE THE HONORABLE AMANDA A. SANSONE**
**UNITED STATES MAGISTRATE JUDGE**

LORI ANN CECIL VOLLMER, CSR, RPR
Federal Official Court Reporter
Sam M. Gibbons United States Courthouse
801 North Florida Avenue, Room 1221
Tampa, Florida 33602
Lori_CecilVollmer@flmd.uscourts.gov
(813) 301-5336

Proceedings transcribed via courtroom digital audio recording by a court reporter using computer-assisted transcription.

APPEARANCES

PRESENT ON BEHALF OF THE PLAINTIFF,
THE UNITED STATES OF AMERICA:

MS. WHITNEY MACKAY,
UNITED STATES ATTORNEY'S OFFICE
400 North Tampa Street
Suite 3200
Tampa, Florida 33602
(813) 274-6000
whitney.mackay@usdoj.gov

PRESENT ON BEHALF OF THE DEFENDANT,
JOSEPH SCOTTO,

MR. BRIAN H. BIEBER
GRAYROBINSON, PA
Suite 3200
333 SE 2nd Avenue
Miami, Florida 33131
(305) 445-5320
brian.bieber@gray-robinson.com

ALSO PRESENT:

Ms. Charlene Marie Cohen, Pretrial Services

PROCEEDINGS

(Open court.)
(Defendant present.)
(Court called to order.)

COURT SECURITY OFFICER: All rise.

This Honorable Court is now in session, the Honorable Amanda Arnold Sansone presiding.

Please be seated.

THE COURT: Okay. Good morning.

We are here on ***Case No. 26-cr-89-JLB-AAS, United States versus Joseph Scotto***.

Could counsel start by -- state their appearances starting with the government, please?

MS. MACKAY: Yes. Good morning, your Honor.

Whitney Mackay on behalf of the United States.

THE COURT: Thank you.

MR. BIEBER: Good morning, Judge.

Brian Bieber on behalf of Joseph Scotto. He's present in court.

THE COURT: Great. Thank you.

And so it's my understanding that we are going to do two things today in this case. One is the initial appearance and then also the guilty plea.

Is that your understanding, too, Mr. Bieber?

MR. BIEBER: It is, Judge.

THE COURT: Okay. So what we'll be doing, Mr. Scotto, is we will do the initial appearance.

Do we have anybody here from pretrial? I don't see --

MS. COHEN: Yes, your Honor.

THE COURT: Oh, you're hiding, Ms. Cohen. Sorry.

So what we'll do is we'll do the initial appearance part first and then take a short recess if there's any instructions that Ms. Cohen needs to give you from Pretrial Services and then we'll launch into the guilty plea part of the hearing.

I'll stay on the bench during the -- the recess. It's really just so that Ms. Cohen isn't stuck having to sit here during the guilty plea part, too.

This microphone is a little weird today. There we go.

Okay. So just some preliminary questions. Do you have any physical or mental condition that makes it difficult for you to participate in this hearing today?

THE DEFENDANT: No, your Honor.

THE COURT: And -- let's see.

Have you taken any medication, drugs, anything

else that would make it difficult for you to focus throughout the hearing?

THE DEFENDANT: No, I have not, your Honor.

THE COURT: Now, for your -- for the guilty plea part of the hearing, I'll need you under oath and I always worry that I'm going to forget to have you put under oath for that part. So I'm going to go ahead and have you put under oath now before the initial appearance.

So, Mr. Smith, if you could go ahead and put Mr. Scotto under oath, please.

COURTROOM DEPUTY: Please stand and raise your right hand to be sworn.

THE DEFENDANT: (Complied.)

COURTROOM DEPUTY: Do you solemnly swear or affirm under penalty of perjury the answers you shall give to the questions propounded by this Court will be the truth, the whole truth and nothing but the truth?

THE DEFENDANT: Yes, sir.

(Defendant sworn.)

COURTROOM DEPUTY: Please state your full name for the record.

THE DEFENDANT: Joseph Scotto.

THE COURT: You may be seated.

THE DEFENDANT: (Complied.)

THE COURT: Okay. And so do you understand now that you're under oath, that if you make -- if you fail to tell the truth, that could later be used against you in a separate prosecution for perjury and false statement?

THE DEFENDANT: Yes, your Honor.

THE COURT: So do you understand what it means to tell the truth?

THE DEFENDANT: Yes, I do.

THE COURT: Thank you.

So you are here on an information and you have several rights in connection with this information.

First of all, you do have the right to have an attorney in this case and you may consult with your attorney and be represented at all stages of the proceedings both when you're in court and when you are out of court.

Mr. Bieber has represented that he is retained by you, is that correct?

THE DEFENDANT: Yes, it is.

THE COURT: Just so you understand, if the circumstances are such that you could no longer afford counsel, then you would just submit the appropriate documentation and then you would be eligible for me to appoint counsel for you.

Do you understand that too?

THE DEFENDANT: Yes.

THE COURT: Looking at the information, you've been charged in this information with one count and it's for making and subscribing a false tax return. The date on it is on or about April 15th of 2023, and that you -- specifically, for tax year 2022, that there had been a written declaration in IRS Form 1040 that was filed with the IRS, you knew it not to be true and it reported a total income of over $4.2 million, and that's charged to be in violation of 26, United States Code, Section 7206(1) and 18 USC Section 2.

Do you understand that that's the charge being brought against you with this information?

MR. BIEBER: It was understated in that amount, Judge. You said --

THE COURT: Oh, I'm sorry. Understated --

MR. BIEBER: Yeah, yeah.

THE COURT: -- your total income by 4. -- thank you, by 4. --

MR. BIEBER: Of course.

THE COURT: -- over $4.2 million.

Do you understand that that's the count in the information?

THE DEFENDANT: Yes, your Honor.

THE COURT: Thank you.

And just so -- I need to make sure that you understand, I do have your waiver of indictment form here. You do have the right to instead be charged by an indictment. That would mean that your case would be brought forth before the a Grand Jury. The case would be presented to the Grand Jury and the Grand Jury would be deliberate and ultimately an indictment would only be returned if the appropriate number of Grand Jury -- Jurors agreed that -- that there's probable cause that a crime had occurred and that you had committed that crime.

On the other hand, this information was not submitted to a Grand Jury and instead, it is a formal accusation by the United States Attorney's Office.

Now, again you could proceed by way of the information, but only if you're willing to waive your right to an indictment and the waiver of indictment form does indicate on it that you will be confirming that waiver in open court at a hearing. So we're at that hearing now.

Do you waive your right to an indictment?

THE DEFENDANT: Yes, I do, your Honor.

THE COURT: Okay. I'm signing off on that form now.

(Brief pause.)

THE COURT: And in connection with this charge, you do have the right to remain silent. You are not required to make a statement to anyone, and that includes to law enforcement. If you've already made a statement, you do not need to say anything more and if you start to make a statement, you may stop yourself at any time.

You have the right to speak to your attorney prior to any questioning and you also have the right to have your attorney there with you during any questioning.

What you need to understand is that if you make a statement during questioning, that statement could later be used against you.

So do you understand that?

THE DEFENDANT: Yes.

THE COURT: And then you also do have the right to have the matter of bail considered. It's my understanding that you are already on conditions of release that were set out of the Eastern District of New York and in Case No. 24-cr-564. Well, that's -- they were set in the Eastern District of New York for a case that was pending here with the Case No. 24-cr-564.

So, Ms. Mackay, what is the government's position on detention or release for Mr. Scotto in this case?

MS. MACKAY: Your Honor, the government is not

seeking detention.

THE COURT: Okay. And is -- and is there any concern at all about just implementing the same conditions of release that are in this order that I'm looking at out of the Eastern District of New York?

MS. MACKAY: No, your Honor.

THE COURT: Okay. And, Mr. Bieber, anything -- any issue that you or your client have with the prior order on the conditions of release?

MR. BIEBER: No, your Honor.

I do see some errors/corrections I need to make in the Pretrial Services Report. So just let me know when you want me to put that on the record.

THE COURT: The Pretrial Services Report from the -- from the Eastern District of New York?

MR. BIEBER: Well, actually it's the one dated yesterday.

THE COURT: Oh, the memorandum?

MR. BIEBER: Yes.

THE COURT: Okay.

MR. BIEBER: Which did rely on some of the information in New York. So just to make it 100 percent accurate --

THE COURT: Sure, please.

MR. BIEBER: -- that's always my practice.

So...

THE COURT: Go ahead.

MR. BIEBER: Okay. Well, the last thing that I was going to say, but it addresses what you just said with respect to the order on his conditions, it is missing that his travel is permitted to the Southern District of Florida as well.

THE COURT: Okay.

MR. BIEBER: I think we had that amended after the initial conditions, right?

THE DEFENDANT: Yes.

MR. BIEBER: Yes, we did.

So that's not in here.

And then on Page 1 of the Pretrial Services Report, the third paragraph, jury trial is no longer scheduled to commence. Judge Mizelle had canceled that date.

THE COURT: Okay.

MR. BIEBER: I'm sure it's assuming that the other two co-defendants plead, which is set for the month of May, which according to what I've seen in the docket, there are signed plea agreements. So that's why that was done.

THE COURT: Okay.

MR. BIEBER: Page 2, Mr. Scotto, at the bottom,

Judge, last full paragraph, he is now 45.

THE COURT: Okay.

MR. BIEBER: And Page 3, under the heading "Employment History - Financial Resources," as you can imagine, Judge, when someone is arrested without warning, which he was in Islip last year, it says, under "Employment History - Financial Resources," last sentence, "According to the defendant, he earned approximately $3 million in 2024." It's approximately $4 million and that's been disclosed to the government. It's just I want to be 100 percent correct.

Whether he made the error or Pretrial Services made the error, he does not remember, but that was within a couple of hours of being arrested.

With respect to finances, those were the numbers/figures given at that time. So they are different now. Specifically, on Page 3, his business income is no longer $250,000 a month. It's approximately $40,000 a month.

Those, your Honor, are the only corrections.

And his passport is mentioned in here. I did discuss it with the government. It has expired as of December. Pretrial confirmed that. We are, without objection from the government, requesting the return of the passport so that he can renew it. And when it gets

renewed, he will be under the obligation to turn it over to me. I believe there are no concerns based on his continuing cooperation.

THE COURT: Okay. Let's -- let's just address one thing at a time, though.

So as far as the order of release, that, I will adopt the -- the previously entered order of release that's at -- it's at -- in the Middle District of Florida. It's at Case No. 24-cr-564-KKM-TGW. It's Document 12-2. So it came in with the Rule 5 paperwork as an attachment. But I will note in my order of release that it's adopting that, but as modified, and the modification was to include travel to the Southern District of Florida.

MR. BIEBER: Thank you, Judge.

THE COURT: Thank you.

And are -- are you being supervised -- I'm assuming you're being supervised out of the Eastern District of New York, is that correct?

THE DEFENDANT: Yes, that's correct.

THE COURT: Okay. And does -- I -- I know every district does it a little bit differently.

Does the Eastern District of New York, is it Pretrial Services there that has your passport or is it the Clerk of Court that has your passport?

THE DEFENDANT: I turned it over to Pretrial

Services, but I'm not sure who is in possession of it, your Honor.

THE COURT: Okay. Ms. Cohen, do you have any idea?

MS. COHEN: Pretrial Services said that they are in possession of it.

THE COURT: They are. Okay.

So let's handle that by a separate motion and separate order then.

MR. BIEBER: Sure.

THE COURT: So -- so, Mr. Bieber, on Mr. Scotto's behalf, do you want to make a motion for -- for the court to order Pretrial Services in the Eastern District of New York to -- I'll just say Pretrial Services -- to return Mr. Scotto's expired passport to him?

MR. BIEBER: Yes, your Honor.

THE COURT: Okay. And any objection to that, Ms. Mackay, from the government?

MS. MACKAY: There is no objection from the government, your Honor, given the defendant's cooperation thus far. We have no concerns.

THE COURT: Okay. So -- and but then, you want to also have permission -- I would assume -- let me look at your order of release because it probably had a provision in there to not --

MR. BIEBER: To not --

THE COURT: -- about not applying --

MR. BIEBER: -- obtain travel documents or...

THE COURT: Let's see. Okay. So then just to keep it cut and clean, let's do this as a separate oral motion requesting permission to obtain a new passport.

MR. BIEBER: Yes, Judge.

THE COURT: Ms. Mackay, any objection to that?

MS. MACKAY: No, your Honor, just as long as there is the subsequent condition of it being turned over immediately to Mr. Bieber.

THE COURT: Okay. So -- okay. So the -- so I'm just making notes so I make sure we do all the paperwork correctly.

So the release order is going to adopt the release order found at 12-2 in Case No. 24-cr-564 as modified to permit travel to the Southern District of Florida. Separately, an unopposed oral motion for Pretrial Services to return Mr. Scotto's expired passport. That's granted.

And then an unopposed oral motion for Mr. Scotto to be permitted to apply for a new passport. That's granted on the condition that upon issuance of the new passport, Mr. Scotto will give it to his counsel.

And then I'll also require that you comply with

any other instructions from Pretrial Services concerning the -- the application process for issuance of that new passport. And by that, I mean they may ask you for updates, like, you know, to let them know what day you applied for it, to let them know, kind of, if you applied to have it expedited, just things like that. If they have instructions for you about that process, you would need to comply with those instructions. Okay?

Ms. Cohen, anything that you think needs clarification on that?

MS. COHEN: No, your Honor.

THE COURT: Thank you.

Okay. Otherwise, on the release order, it does look like you already did the -- the bond. So this order will just release you subject to that other bond. Do you really -- on your -- well, I'll just do it as a -- as a release on your on recognizance as far as the paperwork is for this.

Any objection to that, Ms. Mackay?

MS. MACKAY: No, your Honor.

THE COURT: Okay. So you'll get separate bond paperwork, very similar to what you signed in New York, but it's just going to have a zero bond on it. I don't know why we have to do that, but it's a -- it's a form we have to do.

Okay. So I think that covers -- let's see. Anything else we need to address with the conditions of release?

MR. BIEBER: I don't think so, no.

MS. MACKAY: Not from the United States, your Honor.

THE COURT: Okay. I'm -- I'm not even -- all I'm going to do is just have this be in the order of release. It's going to adopt it. I'm not even going to include the standard conditions. All of those apply from before. So all of that will be -- I mean, the only part that I find helpful is that it lists all the counties of the Middle District, but are you really coming back and forth to the Middle District other than coming here to court?

THE DEFENDANT: No, your Honor.

THE COURT: So then I'll just -- if you do go somewhere else in the Middle District, it will require a little extra work from your counsel to look up which county is involved in the Middle District of Florida.

Okay. So we'll leave the rest of that out.

Okay. And, Ms. Mackay, if you could just confirm that the government is aware of and will comply with its obligations under Rule 5(f) in ***Brady*** and its progeny?

MS. MACKAY: Yes, your Honor.

THE COURT: Anything else for the initial appearance part for Mr. Scotto's case?

MS. MACKAY: Not from the government, your Honor.

THE COURT: Anything else, Mr. Bieber?

MR. BIEBER: No, Judge.

THE COURT: Ms. Cohen, do you need to give any instructions or do you even have any?

MS. COHEN: No, your Honor.

THE COURT: Okay.

MS. COHEN: I already spoke with the defendant.

THE COURT: Great. You're welcome to stay, but you're welcome to go.

MS. COHEN: Thank you, your Honor.

THE COURT: Thank you.

Okay. So let's switch over then to initial appearance part.

Ms. Mackay, are you ready for the initial appearance part?

MS. MACKAY: Yes, your Honor. I'm ready.

THE COURT: I'm sorry. Guilty plea part, not initial appearance.

MS. MACKAY: Yes, your Honor. That too.

THE COURT: And, Mr. Bieber, is your client

ready as well?

MR. BIEBER: Yes, your Honor.

THE COURT: Okay. You have the right to plead guilty in front of either me or the district judge assigned to this case. This case is assigned to Judge Badalamenti. So it's a different judge than your other case.

You and your attorney have both signed a form that said that you would like to go forward with this hearing before me.

Is that still what you would like to do?

THE DEFENDANT: Yes, your Honor.

THE COURT: Now, I can only recommend your plea of guilty be accepted if I find that you are pleading guilty freely and voluntarily and if there's a factual basis for your plea. So as a result, I'll be asking you a series of questions today about you and about your case.

If you don't understand a question that I ask you, that's completely okay, but I need you to tell me that you did not understand the question. Otherwise, if you answer the question, I'm going to assume that you did understand it.

Okay?

THE DEFENDANT: Okay.

THE COURT: Also, you have Mr. Bieber sitting there right next to you. If at any point you need to talk

to him, that is no problem at all. Just let me know so that we can mute all the microphones in the courtroom. They put in these new microphones in the courtroom and they are very sensitive. So what I don't want you to do is think that you are muting the microphone right in front of you, but then inadvertently the one next to you or behind you is picking up your conversation.

So again, if you want to have a confidential conversation with him, that is not a problem at all. Just let us know so that Mr. Smith can mute all of the microphones in the courtroom at once. Okay?

THE DEFENDANT: Yes.

THE COURT: The single charge that's against you in this case, have you fully discussed that charge and the case in general with your attorney, Mr. Bieber?

THE DEFENDANT: Yes, I have, your Honor.

THE COURT: Have you also had an opportunity to review the facts and the evidence in this case with him?

THE DEFENDANT: Yes.

THE COURT: Have you discussed with him all of your options in this case, including your option to go to trial if you wanted to go to trial?

THE DEFENDANT: Yes, I have, your Honor.

THE COURT: And are you fully satisfied with

the advice and the representation that you have received from your attorney?

THE DEFENDANT: Yes, I am, your Honor.

THE COURT: Turning to your plea agreement, I have a copy of that plea agreement in front of me.

Do you have a copy in front of you?

THE DEFENDANT: Yes. We have one here.

THE COURT: And let me just ask you how far did you go in school?

THE DEFENDANT: I finished my bachelor's.

THE COURT: So then is it fair for me to assume that you are able to read all of the documents in this case, including your plea agreement and any discovery?

THE DEFENDANT: Yes. I fully read everything, your Honor.

THE COURT: And looking at the plea agreement, there's a line on the bottom of each page and then also a line on the last page and the lines on the bottom of each page were for you to initial each page and then the line on the last page of the plea agreement was for you to sign the plea agreement.

If you could, please take a minute and look through the plea agreement and confirm that those are, in fact, your initials on the bottom of each page and

your signature on the last page.

(Brief pause.)

THE DEFENDANT: Yes, those are my initials and signature, your Honor.

THE COURT: Before you initialed and signed the plea agreement, did you read it from cover-to-cover?

THE DEFENDANT: I did.

THE COURT: Did you also go over it with your attorney?

THE DEFENDANT: Yes, I did.

THE COURT: And I don't want to know any questions during this proceeding that you asked him, and I certainly don't want to know any legal advice that he gave you, because that's all protected.

But what I do want to know is just, gently speaking, did your attorney give you an opportunities to ask him questions if you had questions?

THE DEFENDANT: Yes.

THE COURT: And if you did ask him questions, did he answer those questions to your satisfaction?

THE DEFENDANT: Yes, he did.

THE COURT: So do you feel comfortable that you understood everything it was that you were agreeing to when you initialed and signed this plea agreement?

THE DEFENDANT: Yes, I felt comfortable.

THE COURT: So what I'm going to do now, and I tend to jump around a little bit because I sort of break it out by topic, but what I'm going to do first is I'm going to go over sections of the plea agreement that contain promises. I'll tell you where I'm looking so that you can follow along with me if you'd like to.

If at any point -- I generally summarize the sections as I'm -- as I'm going over there. If at any point something doesn't sound right to you or if you want to take the time to read the section to yourself, that is no problem. Just tell me that you want to do that.

And again, if I summarize it in such a way that it doesn't make sense, by all means let me know. Just like how a few minutes ago when I was going on your information and I sort of summarized it incorrectly and Mr. Bieber pointed that out to me, I want you to do the exact same thing while we go over the plea agreement. Okay?

THE DEFENDANT: Yes.

THE COURT: So starting off on Page 1, Paragraph A 1, that paragraph simply identifies that you're pleading guilty to Count One of the information. As we've already gone over, there's only one count in the information.

But then if you look at Page 3, Paragraph 5, it

indicates there that -- that all of the charges, though, in the other case, so the 24-cr-564, that those charges, at least it's my understanding of this, will be dismissed at your sentencing in this case.

Is that your understanding?

THE DEFENDANT: Yes, that's my understanding.

THE COURT: Okay. And then at Page 3, Paragraph 6, that section is titled, "No Further Charges." It says that the government agrees not to charge you with any other federal crimes known to it at the time of the execution of this plea agreement related to the conduct in this plea agreement.

Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Okay. I'm going to skip over those next two just because those deal more directly with punishment. So we'll address those when we talk about punishment.

Page 4, Paragraph 9, though, in that paragraph, it's titled, "Guideline Sentence." The government promises in that paragraph that it will recommend to Judge Badalamenti that you be sentenced within the applicable guidelines range as determined by the Court.

And then Paragraph 10 is titled, "Acceptance of Responsibility - Three Levels." And in that section,

it says the government will recommend to the Court that you receive up to three levels of a downward adjustment for acceptance of responsibility and that whether it's two levels or three levels depends on what your offense level is at your sentencing.

You'll see at Paragraph 11, in this paragraph, the government -- well, I guess it's promising that is an estimate of what -- how it's -- how it's calculating at this time because you'll see the qualifier, based on the information now available to it, that the government is estimating what your adjusted offense level is and -- and they include in here the chart of how they get to that offense level of 19.

But then it does say that you understand that that estimate is not binding on the Court.

So do you understand that?

THE DEFENDANT: Yes, I do, your Honor.

THE COURT: Then there's a couple of sections -- a few sections actually that address cooperation. So Paragraph 12 is titled, "Cooperation - Substantial Assistance to be Considered," and this section goes through and outlines what it is that the government is willing to do to the extent the government determines that you are providing cooperation that qualifies for substantial assistance.

So that's whether the government is willing to

file a motion and what type, whether that substantial assistance occurs before or after your sentencing, but you'll see at the very end of9 that section -- so now I'm looking at Page 7, the very end, midway down on the page, there's a very lengthy sentence at the end of -- of that section that starts with "in any case."

Do you see that?

THE DEFENDANT: Yes.

THE COURT: Okay. That section essentially says that you understand that whether you have provided sentencing assistance and what type of motion the government will file, if the government files any motion, that that's a decision for the United States Attorney's Office for this district only and that you cannot challenge that decision in any way.

Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Then the next section addressing cooperation is titled, "Use of Information - Section 1B1.8." And in that section, the government agrees that no self-incriminating information that you provide during cooperation will be used in determining your applicable guideline range.

And last, there is this lengthy section at Paragraph 14 titled, "Cooperation - Responsibilities of

Parties." And that section goes through and outlines what your responsibilities are and then also what the government's responsibilities are in terms of any cooperation.

So do you understand those to be the promises contained within your plea agreement?

THE DEFENDANT: Yes, I do.

THE COURT: Ms. Mackay, let me just ask you, on Page 9, at Paragraph 15, that was the section that says that the DOJ tax section approval is required.

Has that happened?

MS. MACKAY: Yes, it has, your Honor.

THE COURT: Okay. So I've gone over with you promises and those promises contained several recommendations. And peppered throughout your plea agreement, too, it also included over and over again that those recommendations were not binding on Judge Badalamenti and that if he rejects any of those recommendations at your sentencing, that that's not a reason that you could withdraw your plea of guilty.

So do you understand that?

Do you understand that those recommendations are not binding on Judge Badalamenti?

THE DEFENDANT: Yes.

THE COURT: Okay. And so do you also understand

that if he rejects any of those recommendations, that's not a reason that you can withdraw your guilty plea?

THE DEFENDANT: Yes.

THE COURT: Have any other promises been made to you other than the promises that we've gone over in your plea agreement?

THE DEFENDANT: No other promises, your Honor.

THE COURT: Mr. Bieber, are you aware of any other promises that have been made to your client?

MR. BIEBER: No, Judge.

THE COURT: Ms. Mackay, is the government aware of any other promises?

MS. MACKAY: No, your Honor.

THE COURT: Mr. Scotto, has anyone threatened you, coerced you or otherwise tried to force you in any way to plead guilty in this case?

THE DEFENDANT: No.

THE COURT: Are you pleading guilty freely and voluntarily?

THE DEFENDANT: I am.

THE COURT: And is that a decision that you made after speaking to your attorney?

THE DEFENDANT: Yes, it is.

THE COURT: Do you understand that the crime that you are pleading guilty to today is considered a

federal felony?

THE DEFENDANT: Yes, I do, Judge.

THE COURT: So then do you also understand that once you're adjudged guilty, that that may deprive you of valuable civil rights such as the right to vote, hold public office and possess a firearm?

THE DEFENDANT: Yes, I understand that.

THE COURT: Mr. Scotto, are you a United States citizen?

THE DEFENDANT: Yes, I am.

THE COURT: Let's turn back now to your plea agreement and now I'm going to address some of the sections that I skipped over before and that's because my focus now is going to be on the potential punishment that you're facing.

So if you look first on Page 1, the "Maximum Penalties" section, are you there right now?

THE DEFENDANT: Yes.

THE COURT: Great.

Okay. It says that Count One carries a maximum sentence of three years imprisonment. So you don't have a minimum mandatory, just this maximum, a fine of $250,000, a term of supervised release of not more than three years, and a special assessment of $100 per felony count for individuals. So again, no minimum mandatory, but there

is a three-year max.

And then there's this reference to a term of supervised release of not more than three years. What that means is if you serve a term in federal prison, after you are released, you would be placed on what's called supervised release and you would have restrictions placed on you.

If you violate your conditions of supervised release, you could be ordered back to prison for an additional period of time.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Similarly, and I -- I don't know what's on the table in terms of probation or a sentence, but if you were sentenced instead to a term of probation and are sentenced to a term of incarceration in the first instance, you would have conditions of your probation much like how you have conditions of pretrial release right now.

What you need to understand, though, is if you violated any of those conditions of probation, even though you weren't sentenced to prison as part of your original sentencing, you could be ordered to prison for violating your probation.

Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Okay. On Page 3 at Paragraph 7, there, you promised that you're going to pay all the taxes, interest and penalties due to you -- due to the IRS for tax year 2022 and you also promised that you're going to cooperate with the IRS.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And do you also understand that that may be a term of the condition of your sentence of probation or supervised release?

THE DEFENDANT: Yes.

THE COURT: And then there, also at Paragraph 8, is a section titled, "Discretionary Restitution to Victim of Offense of Conviction." And there, you agree to make full restitution to the U.S. Department of Treasury, and also its agency, the IRS, and that that's left open as an amount to be determined by the Court.

So do you understand that you've also agreed to that?

MR. BIEBER: The amount is in the plea agreement later, Judge, is what Mr. Scotto just mentioned.

THE COURT: It says -- okay. Let's see.

MR. BIEBER: Yeah. Not in that paragraph.

THE COURT: Right. I see it in the next paragraph.

MR. BIEBER: Yeah. So...

THE COURT: But -- but just to be clear --

MR. BIEBER: But he answered, yeah.

THE COURT: -- in the last sentence, though, it does sort of leave it open in the sense that it says that the final restitution amount will be determined by the court at the time of sentencing.

Let me just ask you, Ms. Mackay, at this point does the government anticipate that that amount could increase based on this last par- -- this last sentence?

MS. MACKAY: No, your Honor.

I don't anticipate that.

THE COURT: Okay. So again, at least Ms. Mackay has made a representation is that she currently doesn't anticipate that.

If you want to talk with Mr. Bieber, that's okay. We can mute the microphones. Do -- does he want to talk to you?

MR. BIEBER: I just need to clarify one thing before.

THE COURT: We'll go ahead and mute the microphones.

(Brief pause.)

MR. BIEBER: Okay. We're ready.

THE COURT: Okay.

MR. BIEBER: We're ready to proceed, Judge.

THE COURT: So just to be clear, and I do see that it has the amount of the underreported income in the amount that is slightly over $4.2 million, but I just want to make sure that you understand, Mr. Scotto, that there is sort of some -- some language in here that does give the government some flexibility if -- between now and your sentencing -- they reach a different conclusion.

Now, you've just heard Ms. Mackay say that they don't anticipate reaching a different conclusion, but I want to make sure you understand that right now, it appears it's that underreporting of income in the amount of the $4,209,940, but then again the language is a little bit looser than that.

Do you understand that, Mr. Scotto?

THE DEFENDANT: Yes.

THE COURT: Okay. So do you understand all of the possible punishment consequences of what you are facing?

THE DEFENDANT: Yes.

THE COURT: I'm going to take a couple minutes now to go over with you what happens next after today's proceeding.

Once Judge Badalamenti accepts your plea, the

next step is that a probation officer is going to prepare a very detailed report, a presentence report, to assist him in deciding what sentence to give you. It's very detailed about you and your personal history and it's also detailed about the facts of this case.

Also, that report is going to include the probation officer's opinion of what guidelines apply to you and what your advisory sentencing guideline range should be.

Before Judge Badalamenti even looks at that report, though, you will get a copy through your attorney and Mr. Bieber will go over that report with you.

If you have any disagreement with anything in that report, then he could make objections on your behalf to -- your attorney could make objections on your behalf to the probation officer and ask the probation officer to make changes to that report.

Do you understand that part of the process so far?

THE DEFENDANT: Yes.

THE COURT: The government has the same right. The government will go over that report too. If there's anything they don't like in that report, they also have the right to make objections and to ask the probation officer to make changes.

Do you understand that too?

THE DEFENDANT: Yes.

THE COURT: If the probation officer refuses to make the changes that you want or that the government wants, whoever has made those objections and asks for those changes preserves those objections and can make them directly to Judge Badalamenti at your sentencing.

Do you understand that too?

THE DEFENDANT: Yes.

THE COURT: Okay. So then when you are at your sentencing, Judge Badalamenti is going to give you an opportunity to speak directly to him if you would like to speak directly to him.

He's also going to give the attorneys the time that they need to present any evidence or information that's relevant to the sentencing.

If there are still objections to what's in that report, then Judge Badalamenti will first rule on those and then he will decide what guidelines apply to you and what -- and what your advisory sentencing guideline range should be.

Do you understand that part of the process?

THE DEFENDANT: Yes.

THE COURT: Once he's determined what he thinks is an appropriate advisory sentencing guideline range for

you, he'll look at the sentencing statute. There's factors he has to consider as part of that statute and ultimately Judge Badalamenti is going to give you a sentence that, in his opinion, is reasonable under the law.

Do you understand that part of the process?

THE DEFENDANT: I do.

THE COURT: So you will not go into your sentencing knowing what your sentence is going to be. It's something that's up to Judge Badalamenti and Judge Badalamenti only.

Do you understand that too?

THE DEFENDANT: Yes.

THE COURT: So if you are unhappy with your sentence when you're at your sentencing, that's not a reason that you can then withdraw your plea of guilty.

Do you understand that?

THE DEFENDANT: I do.

THE COURT: Similarly, when you receive that probation officer's presentence report, if you don't like the numbers that you're seeing in that report, that's also not a reason that you could withdraw your plea of guilty.

Do you understand that too?

THE DEFENDANT: Yes.

THE COURT: Okay. Let's look further back in your plea agreement now.

And now I'm looking at Page 13. So just let me know when you get there.

(Brief pause.)

THE DEFENDANT: Okay. We're there.

THE COURT: Great.

At Paragraph 7 of that page is a short paragraph, but it packs a powerful punch and that's because by this short paragraph, you are giving up your right to appeal your sentence unless one of these four limited circumstances occur.

So I'm going to go over those circumstances with you to make sure that you understand how limited they are and that you are otherwise completely giving up your right to appeal your sentence. Okay?

THE DEFENDANT: Okay.

THE COURT: So if you look first at the little (a) in parenthesis, do you see that in the middle of that section on Page 13?

THE DEFENDANT: Yes.

THE COURT: And I'll spend the most time on this one because this is the one that, to me, requires the most, sort of, explaining.

It says, "The ground that the sentence exceeds

the defendant's applicable guideline range as determined by the Court pursuant to the United States Sentencing Guidelines." So we've talked quite a bit already about these sentencing guidelines, that they are advisory guidelines and that ultimately Judge Badalamenti is going to come up with what he thinks is an appropriate sentencing guideline range for you. It's a range of months with a smaller number of months at one end of the range and a larger number of months at the other end of the range.

Mr. Bieber has probably even maybe shown you the chart that exists that shows you the different ranges.

What you need to understand is as long as Judge Badalamenti sentences you within the range of months that he thinks is an appropriate sentencing guideline range, you cannot appeal your sentence on that ground. It's only if he sentences you to more time.

So once he comes up with that range, if he sentences you -- if he enhances your sentence and sentences you to a longer sentence, then you can appeal on that ground.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Okay. Second is the ground that

your sentence exceeds the statutory maximum penalty. So he'd have to sentence you to more than three years. We already went over your statutory max for you to be able to appeal on that grounds.

The third is after the little (c) in parenthesis. It says, "The ground that the sentence violates the Eighth Amendment to the Constitution," that's the amendment that prohibits cruel and unusual punishment. So you have to be able to argue that your sentence is cruel and unusual to appeal on that ground.

And then last is that the government decides to appeal your sentence, then you are released from this waiver and you can also appeal your sentence.

So do you understand by this short paragraph in your plea agreement that you are giving up your right to appeal your sentence except for one of those four very limited circumstances?

THE DEFENDANT: I understand, Judge.

THE COURT: Also, by admitting to the criminal charge in Count One of the information today, you're not only admitting that you committed that crime, but you're also giving up Constitutional rights that you have.

So I am going to take a moment now to go over those rights with you to make sure that you know, first of all, that you have those rights, but also to make sure

that you understand that you're giving up those rights if you go forward with pleading guilty.

So first you do have the right to plead not guilty and you may continue to plead not guilty. You would then have the right to a jury trial in which the government has to prove the charges against you beyond a reasonable doubt and to the unanimous satisfaction of a jury.

You have the right to the effective assistance of counsel in your defense at all stages of the proceedings and that would include at your trial. And as we already went over, that also includes the right to court-appointed counsel if you can no longer afford counsel.

You also have the right to see and hear all of the witnesses in the case and to cross-examine those witnesses in your defense and you have the right to issue subpoenas to compel people to come to your trial and testify as witnesses for you.

And then, of course, you have the right to testify in your defense, but you also have the right to decide that you do not want to testify. And if you decide that you do not want to testify, that decision cannot be used against you.

So, Mr. Scotto, do you understand that you have those Constitutional rights?

THE DEFENDANT: Yes.

THE COURT: And do you understand that by pleading guilty today to Count One in the information, there is not going to be a trial and you are giving up those rights?

THE DEFENDANT: I understand.

THE COURT: Turning back now to Page 2 of the plea agreement -- and we're in sort of the final stretch now -- if you, could, look at Page 2, Paragraph 3.

That paragraph lists what the elements are for Count One, so what the government has to prove, and it lists five elements: First, that you made or caused to be made a tax-related document for a given tax year; second, that the tax-related document contained a written declaration and that it was made under the penalty of perjury; third, that when you made or helped to make the tax-related document, you knew it contained false material information; fourth, that when you did so, you intended to do something you knew violated the law; and fifth, that the false matter in the tax-related document related to a material statement.

So do you understand this is what the government has to prove for Count One in the information?

THE DEFENDANT: Yes.

THE COURT: So now let's turn further back into the plea agreement. The last thing I have to do is determine if there is a factual basis in support of those elements and you have a section of your plea agreement that's devoted to this.

It starts -- the section itself starts on the bottom of Page 15, but the facts really start on Page 16 and then spills over barely to Page 17. Really, the facts -- the substantive facts are on Page 16.

So I generally asked you earlier in this hearing about the plea agreement and if you had read the plea agreement, if you had gone over it with your attorney, if you understood everything in the plea agreement and you had answered yes to all of those questions.

This fact section is important because Judge Badalamenti can rely on these facts when he's deciding what sentence to give you.

So did -- the attention that you paid to your entire plea agreement, did you also pay that attention to this fact section?

THE DEFENDANT: Yes.

THE COURT: Okay. So the questions I'm getting ready to ask you are two, and I'll admit they're sort of the same question, just asked in two different ways.

I'm going to ask you if you have any disagreement with any of the facts on Page 16 and then I'm also going to ask you if all of the facts on Page 16 are true.

But before I ask you those questions, would you like to read that page over to yourself again?

THE DEFENDANT: I read it again before we started, Judge.

THE COURT: Okay. So you feel like you -- you feel like you know enough from what's on that page because you've read it enough times that you can answer these questions?

THE DEFENDANT: That's correct, your Honor.

THE COURT: So do you have any disagreement with any of the facts on Page 16 of your plea agreement?

THE DEFENDANT: No, I don't, your Honor.

THE COURT: Are all of the fact on that page true?

THE DEFENDANT: They are.

THE COURT: I'm ready to take your plea when you are ready and you can show me when you are ready by standing up.

THE DEFENDANT: (Complied.)

THE COURT: And again, Mr. Scotto, the information charges you with one count of making and subscribing a false

tax return.

How do you plead to that count, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: Thank you, Mr. Scotto.

And, Mr. Bieber, are you satisfied that Mr. Scotto is pleading guilty knowingly and voluntarily and with a full understanding of all of the consequences of pleading guilty?

MR. BIEBER: Yes, Judge.

THE COURT: Anything else you think I should have covered that I did not cover?

MR. BIEBER: No, your Honor.

THE COURT: Thank you.

You all are both welcome to be seated if you'd like.

THE DEFENDANT: (Complied.)

MR. BIEBER: (Complied.)

THE COURT: And, Ms. Mackay, anything the government thinks I should have covered that I did not cover?

MS. MACKAY: None, your Honor.

THE COURT: Mr. Scotto, the only thing I will add and I have no reason to believe that you're not taking your -- your conditions very seriously, the way the Bail Reform Act reads, though, is that once someone is adjudicated

guilty, they are to be taken into custody. Now, in this district, we don't do that generally. As long as someone is doing well on release, they stay on release until their sentencing. It seems to me, at least from what I can tell, you are doing very well on release.

So again, I'm not saying this because I have a concern that you're going to -- to have any issues. I just want to make sure that you understand that -- hopefully, I -- I won't be seeing you in the next 90 days, but if I do have to see you in the next 90 days because there's a violation of your pretrial release or if my colleague has to see you in the other case, just understand that once you've been adjudicated guilty, it's much more difficult for us to keep you on release pending your sentencing. Okay?

THE DEFENDANT: (Nodding.)

THE COURT: Do you understand?

You're nodding your head yes?

THE DEFENDANT: Yes.

THE COURT: Okay. It is the finding of the Court in this case that Mr. Scotto is fully competent and that he's capable of entering an informed plea.

I find that he is aware of the nature of the charge in the information and that he's also aware of the consequences of pleading guilty.

I find that his plea of guilty is a knowing and voluntary plea supported by an independent basis in fact concerning each of the essential elements for Count One.

In my report to Judge Badalamenti, I will report that Mr. Scotto's plea of guilty be accepted and that he be adjudged guilty and have his sentencing date set accordingly. Again, I expect that would be about 90 days give or take.

Anything else, Ms. Mackay, that we need to do for Mr. Scotto's case today?

MS. MACKAY: No, your Honor.

THE COURT: Anything else, Mr. Bieber, for Mr. Scotto?

MR. BIEBER: No, Judge.

THE COURT: Does -- does he need to go to the fourth floor to do any paperwork with marshals?

COURTROOM DEPUTY: I am not sure.

THE COURT: Okay. You may have to go check in with the marshals on the fourth floor just to sign off on some paperwork there as well. I'm not sure.

Okay. Thank you. We're in reverse.

MR. BIEBER: Thank you, Judge.

MS. MACKAY: Thank you.

COURT SECURITY OFFICER: All rise.

(Whereupon, the Court adjourned at 11:02 a.m.)

--oo0oo--

UNITED STATES DISTRICT COURT )
)
MIDDLE DISTRICT OF FLORIDA )

REPORTER TRANSCRIPT CERTIFICATE

I, LORI ANN CECIL VOLLMER, Official Court Reporter for the United States District Court, Middle District of Florida, certify pursuant to Section 753, Title 28, United States Code, that the foregoing transcript is a true and correct transcription of the stenographic notes taken by the undersigned in the above-entitled matter, Pages 1 through 47, and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States of America.

I further certify that I am not attorney for, nor employed by, nor related to any of the parties or attorneys to this action, nor financially interested in this action.

IN WITNESS WHEREOF, I have set my hand at Tampa, Florida, this 3rd day of July 2026.

/s/ Lori Ann Cecil Vollmer

Lori Ann Cecil Vollmer, CSR, RPR
United States Court Reporter